**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**(Charleston Division)**

**COLUMBIA GAS TRANSMISSION, LLC.**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 2:25cv289**
**JUDGE IRENE C. BERGER**

**S&S RECYCLING, INC. and**
**ZELORA SIMPKINS,**

**Defendants.**

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants, S&S Recycling, Inc. (hereinafter "S&S") and Zelora Simpkins (hereinafter "Simpkins"), by counsel, Christian R. Harris, respectfully submit this joint response in opposition to Plaintiff's Motion for a Preliminary Injunction. Plaintiff, Columbia Gas Transmission, LLC (hereinafter "Columbia"), seeks an injunctive order from this Court enjoining Defendants from:

a) interfering with or obstructing the right of Columbia, its successors and assigns, to operate and maintain its pipeline; and

b) interfering with or obstructing the right of Columbia, its successors and assigns, to implement and construct necessary safety measures around its pipeline, including the implementation of jersey barriers; and

c) crossing the pipeline except in approved locations, excavating within the pipeline right-of-way, or placing or storing any materials, including scrap metal, over its pipeline.

While the injunctive requests made in Plaintiff's motion may not appear overly unreasonable on their face, the rights and privileges bargained for, and granted, in an Agreement dated April 16, 1980, between the parties predecessors in title, Georgia-Pacific Corporation and Columbia Gas Transmission Corporation, a copy of which is attached hereto as **EXHIBIT A**, are controlling. Any expansion of the restrictions upon Simpkins' use of her property, in addition to those bargained for and set forth in the above referenced "Agreement", amounts to an unconstitutional taking of her property in direct violation of the Takings Clause contained in the 5th Amendment to the United States Constitution and warrant the payment of additional compensation for her loss. In light of the Agreement, the extraordinary and unwarranted requests made by the Plaintiff fail to meet the legal standards for injunctive relief as set forth in Winters v. Natural Resources Defense Council, 555 U.S. 7 (2008).

As explained below, Plaintiff cannot demonstrate a likelihood of success on the merits, cannot show irreparable harm, and fails to prove that the balance of equities or public interest favors the requested relief. In fact, this bold red herring attempt by the Plaintiff to unconstitutionally limit Simpkins'

rights as an American citizen to use and enjoy her land without compensation would, if granted, set a tragic precedence diminishing the rights and land values of countless American property owners. Accordingly, Plaintiff's motion should be denied.

I. **Legal Standard**

A preliminary injunction is "an extraordinary and drastic remedy" that should not be granted unless the movant can establish:

1. A likelihood of success on the merits;
2. A likelihood of suffering irreparable harm in the absence of relief;
3. That the balance of equities tips in its favor; and
4. That the injunction is in the public interest.

Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008).

II. **Plaintiff Has Not Demonstrated a Likelihood of Success on the Merits**

Plaintiff's motion fails to show any legal entitlement to impose the installation of physical alterations, Jersey barriers, on Simpkins' private property without either her consent, or language authorizing such in a valid easement. No such language or rights exist within the 1980 Agreement which authorizes Plaintiff's gas line to operate beneath Defendant's land, nor has Plaintiff shown that one is implied by law or by contract.

Furthermore, the Plaintiff appears to rely on speculative safety or

operational concerns without exercising the legal authority granting it the right to condemn property and override private property rights. Private companies such as Plaintiff should not be permitted to exercise eminent domain-like power by seeking emergency injunctions. A company with the ultimate power of eminent domain under the Natural Gas Act should follow the proper statutory condemnation process and not be permitted to use preliminary injunctions to shortcut property rights. Injunctive relief cannot be used as a vehicle for an unconstitutional taking, especially where just compensation has not been paid.

Paragraph 8 of the 1980 Agreement clearly reserves unto the surface owner the right to use the surface, the space over the surface, and the subsurface of the land occupied by the right-of-way for any and all purposes whatsoever, provided that the owner's use does not interfere with or endanger the operation of the gas pipeline.

> *(8) The party of the first part reserves the right to itself, its lessees, sublessees or assigns, to use the surface, the space over the surface, and the subsurface of the land occupied by said right-of-way for any and all purposes whatsoever, but such reserved right shall not be exercised in such manner as to unreasonably interfere with or endanger the operation by Columbia of the gas pipeline occupying the right-of-way; provided, nevertheless, that the party of the first part does not assume hereby any duty to provide any subsurface or lateral support of the right-of-way and Columbia expressly assumes all risks of injury or damage to said pipeline or to any person or property, which may be caused in whole or in part by a subsidence or cracking of the surface of the right-of-way occupied by said*

*pipeline incident to the lawful mining of the coal underlying said right-of-way, and agrees to indemnify the party of the first part, against, and hold it safe and harmless from, any and all liability for any such injury or damage.*

Since 2007 Defendants have safely operated a recycling business on the surface of the property encumbered by the Plaintiff's right-of-way without incident or concern. Plaintiff had full knowledge of the Defendant's recycling operations and neither objected to the same, nor sought any additional protections for its pipeline which is buried over 5 feet beneath the surface of the ground. Prior to 2007 surface mining activities were conducted on adjacent property causing frequent blasting and equipment weighing over 100,000 lbs to regularly be transported across the right-of-way. This type use of the Defendant's property was bargained for, understood, accepted and agreed upon when the 1980 Agreement was negotiated and signed by the parties predecessors in title.

Injunctions are an equitable remedy, but property rights are protected by the Constitution, and equity cannot override constitutional protections. Just compensation is not merely a matter of equity; it is a constitutional command. Monongahela Navigation Company v. United States, 148 U.S. 312 (1893)

III. **Plaintiff Will Not Suffer Irreparable Harm**

The supposed and speculative harms cited by Plaintiff include alleged

operational efficiencies and loss of customer goodwill and reputation. These speculative harms are compensable with money damages. Injunctive relief is inappropriate where the alleged harm can be measured or remedied by legal damages.

Plaintiff also alleges in its Motion that Simpkins and S&S are denying it the benefit of its property rights, however, the 1980 Agreement grants its property rights and authority to operate and maintain its gas line across Simpkins' property. The negotiated 1980 Agreement does not authorize Plaintiff to install restrictive Jersey barriers on the surface of the land, and, in fact, makes clear that the surface of the land is intended to be reserved for use by the surface owner.

Plaintiff's alleged safety concerns are hollow as, by email on April 22, 2025, Defendants invited, permitted and encouraged Plaintiff to install asphalt crossings at the 4 private roadway intersections with the pipeline right-of-way. (See **EXHIBIT B** Attached Hereto) Paragraph 3 of the 1980 Agreement clearly anticipates private roadway crossings as it provides that where the Plaintiff's gas line crosses private roads, the line shall be laid underground and properly protected.

*(3) Said pipeline shall be laid underground or upon the surface of the ground, as Columbia may elect, provided that the lines shall be laid underground and properly protected where it crosses bottom lands, private roads and tramways and at the party of the first part's request shall be cased whenever it*

*crosses highways or railroads and shall be laid underground at such other places either originally or by alteration, and at such depths as may be designated by the party fo the first part in writing from time to time; and where said line is laid underground, it shall be laid at such depth so as not to interfere with the use of the surface and strata overlying said right-of-way for agricultural purposes, and in any event, ina a trench having a cover of at lease eighteen (18) inches which shall be filled level with the surface, and said pipeline shall be kept fully covered.*

A map showing the 4 private roadway crossings is attached hereto as **EXHIBIT C**.

Moreover, Plaintiff's own delay in seeking this injunction undermines its claim of urgency or irreparable injury. If the barriers were truly essential, Plaintiff would have acted sooner in that prior to the March 2, 2025 gas line breach, Defendants operated safely in this location without incident for 18 years, since 2007. Additionally, prior to 2007, surface mining activities were taking place on and around the property which resulted in frequent blasting activity and regular heavy loads crossing the right-of-way, all of which were anticipated in the 1980 Agreement.

IV. **The Balance of Equities Weighs Against the Injunction**

Defendants acknowledge Plaintiff's authority to condemn property and to limit their property rights under the Natural Gas Act, 15 U.S.C § 717 f(h), however, any expansion by Plaintiff of the rights bargained for in the 1980 Agreement must be accomplished by either agreement with the land owner or

through condemnation. Defendants have attempted to work with Plaintiff to further safeguard the private road crossings over the Plaintiffs line, while Plaintiff seems intent on a free expansion of its surface rights not authorized in its written right-of-way Agreement.

While the Plaintiff has been granted exceptional power to condemn private property from landowners, those powers must not be abused. Plaintiff is a well funded multi-state company with unlimited resources. Defendant Simpkins is a widowed, small Southern West Virginia business owner of S&S Recycling. In balancing the equities of the property rights of a private landowner against the financial goals of a corporation with nearly unlimited resources and the power of condemnation, the landowner's rights should take prevail.

Granting Plaintiff's Motion for Preliminary Injunction would cause Defendants immediate and ongoing harm and create a dangerous precedence for landowner rights across the country. Plaintiff's alleged harm is abstract and avoidable through alternative means such as clearly marking the location of its line, casing of the private roadways or relocation of its line. Granting of the injunction would impose ongoing burdens on private landowners in favor of commercial entities.

V. **<u>The Public Interest Is Not Served by Granting the Injunction</u>**

The public has a strong interest in the protection of private property

rights. Allowing a private corporation to install permanent or semi-permanent physical obstructions on private land, without consent or due process, would set a dangerous precedent. The 1980 Agreement voluntarily entered into between the parties predecessors in title made clear that the surface of the right-of-way areas was being reserved for use by the landowner. To ignore that clear written intent would be alarming to other landowners who have also granted rights-of-way for gas lines and reserved the right to use the surface.

The injunction sought would not address or advance any clear public safety concern. Defendants deny that any action on either of their parts resulted in the unsafe conditions or the Plaintiff's pipeline failure. Plaintiff's claim is red herring attempt to divert attention from its negligent installation, maintenance or servicing of its pipeline and the pipeline's resulting failure. The Court should not allow this unconstitutional circumvention of due process and diminution of property rights and values under the guise of public interest.

**Conclusion**

Because Plaintiff cannot satisfy the requirements for injunctive relief set forth in Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), and because granting the injunction would trample on Defendants fundamental property rights in violation of the 5th Amendment Takings clause of the U.S. Constitution, the motion must be denied.

WHEREFORE, Defendants respectfully requests that the Court deny

Plaintiff's Motion for a Preliminary Injunction in its entirety, and grant such further and additional relief as the Court deems fair, just and appropriate under the circumstances.

Respectfully submitted,

S&S RECYCLING, INC. and ZELORA SIMPKINS
By Counsel

/s/ *Christian R. Harris*

Christian R. Harris
Counsel for Defendants
128 East Second Avenue
Post Office Box 257
Williamson, West Virginia 25661
WV Bar ID No. 7170
304/235/2131 (Phone)
304/235/2132 (Facsimile)
charris@charrislaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**(Charleston Division)**

**COLUMBIA GAS TRANSMISSION, LLC.**

**Plaintiff,**

**v.**

**CIVIL ACTION NO. 2:25cv289**
**JUDGE IRENE C. BERGER**

**11S&S RECYCLING, INC. and**
**ZELORA SIMPKINS,**

**Defendants.**

**CERTIFICATE OF SERVICE**

The undersigned counsel for Defendants, S&S Recycling, Inc. and Zelora Simpkins, does hereby certify that on the 16th day of May, 2025, I filed via the Court's electronic filing system the foregoing DEFENDANTS JOINT RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION and mailed a copy thereof as follows:

Matthew S. Casto, Esq.
BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.
300 Summers Street, Suite 1000
Charleston, West Virginia 25301

/s/ Christian R. Harris
Christian R. Harris (WVSB #7170)

**VERIFICATION**

**STATE OF WEST VIRGINIA**
**COUNTY OF MINGO, TO-WIT:**

This day appeared before me ZELORA SIMPKINS who having been first duly sworn, deposes and states that the facts and allegations contained in *Defendants' Joint Response to Plaintiff's Motion for Preliminary Injunction* are true to the best of her knowledge, belief and information.

Zelora Simpkins
**Zelora Simpkins**

Taken, subscribed and sworn to before me in the above referenced County and State on this the 16th day of May, 2025.

My Commission Expires: April 26, 2029

(SEAL)

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Rebekah Mullins
Christian R. Harris Attorney at Law
128 East Second Avenue
P.O. Box 257
Williamson WV 25661
My Commission Expires April 26, 2029

Rebekah L. Mullins
**Notary Public**

# EXHIBIT A

THIS AGREEMENT, made this 16th day of April, 1983, by and between GEORGIA PACIFIC CORPORATION, party of the first part, and COLUMBIA GAS TRANSMISSION CORPORATION, a Delaware corporation, party of the second part, hereinafter referred to as "Columbia",

WHEREAS, the party of the first part is the owner of certain lands in Logan and Mingo Counties, West Virginia, over which Columbia desires to install a measuring and regulation station, and to construct and maintain a pipeline for the transportation of natural gas and its constituents.

NOW, THEREFORE, WITNESSETH that, for and in consideration of the premises and the sum of One Dollar ($1.00), cash in hand paid and other good and valuable considerations, the receipt of which is hereby acknowledged, the party of the first part does hereby grant, subject to the terms, reservations, exceptions, limitations, restrictions, conditions and agreements hereinafter set out, unto Columbia, its successors and assigns, the right to erect, operate and remove a measuring and regulation station and the right to lay, maintain, and operate a 16-inch diameter pipeline under and across the said land of the party of the first part above referred to situate in Logan and Mingo Counties, West Virginia. Said pipeline shall be located substantially as shown in "red" on a map marked Exhibit "A", designated as Drawing No. C-430-B, Sheets 1, 2, and 3, which is attached hereto and made a part hereof and entitled:

COLUMBIA GAS TRANSMISSION CORP.
Map Showing
PROPOSED 16" GAS PIPE LINE
And
PROPOSED REGULATOR & MEASURING STATION LOT
On Lands Of
GEORGIA PACIFIC

Island Creek Dist. — Logan Co., WV
Hardee Dist. — Mingo Co., WV
Scale - 1" = 2000' — March 1, 1979
Revised - April 5, 1979

The measuring and regulation station shall be located as shown on a map marked Exhibit "B" attached hereto and made a part hereof and designated as Drawing No. SL-8845.

It is also understood and agreed that after said pipeline has been installed, a survey of said line will be made and a metes and bounds description of said line will be marked "Exhibit C" and attached to this agreement and made a part hereof.

In connection with the construction and maintenance of said pipeline, the party of the first part also grants unto Columbia the following rights, that is to say:

(a) The right, at all times, to inspect, maintain, replace or repair said pipeline, as well as to remove from the right-of-way all or any part thereof, and any equipment at any time placed thereon by Columbia and all necessary rights of ingress and egress, on, upon, over, along and across said right-of-way as may be necessary for the purposes aforesaid.

(b) All necessary and convenient rights of ingress and egress on, upon, over, through and across the adjacent lands of the party of the first part at such places as will not unreasonably injure or interfere with the use and development of said lands for the purpose of passing to and from said right-of-way and of transporting to and removing from said right-of-way all such pipe, material and equipment used, or to be used, in the construction, maintenance and operation of said measuring station, pipeline or right-of-way.

The foregoing grant, and these presents, are subject to the following reservations, exceptions, limitations, restrictions, conditions, undertakings and agreements, each of which is agreed to as material.

(1) All estates, rights and benefits of Columbia hereunder shall revert to, and revest in the party of the first part upon the occurence of any one of the following happenings or contingencies, whichever shall first occur (such a happening or contingency so first occurring being hereinafter referred to as "event of termination"), and that is to say:

(a) If Columbia shall either abandon, cease to operate or remove the said pipeline. A temporary cessation of operations of less than one year by Columbia shall not be construed as an event of termination and the cessation of operations caused by strikes, acts of God or for any reason not within the control of Columbia shall not be interpreted as a cessation of operations.

(b) If Columbia shall violate, and/or fail to perform, and/or fail to abide by any one of the reservations, exceptions, limitations, restrictions, conditions, undertakings and agreements in these presents contained, binding upon it.

(2) Upon an event of termination, Columbia shall remove said pipeline and all material thereof from said right-of-way and shall fill up the trench occupied by said pipeline, level with the adjoining real estate, and shall leave the said right-of-way free of debris and restore the same to its natural condition in all particulars, all within a reasonable time after said event of termination, and if Columbia fails so to do after being notified in writing so to do by the party of the first part, the said pipeline and all of said material shall vest in, and be the absolute property of the party of the first part; or the party of the first part may, at its election, require the removal of the same and the restoration of the premises, or may have the same removed and restoration made at the expense of Columbia.

(3) Said pipeline shall be laid underground or upon the surface of the ground, as Columbia may elect, provided that the lines shall be laid underground and properly protected where

it crosses bottom lands, private roads, and tramways and at the party of the first part's request shall be cased whenever it crosses highways or railroads and shall be laid underground at such other places either originally or by alteration, and at such depths as may be designated by the party of the first part in writing from time to time; and where said line is laid underground, it shall be laid at such depth so as not to interfere with the use of the surface and strata overlying said right-of-way for agricultural purposes, and in any event, in a trench having a cover of at least eighteen (18) inches which shall be filled level with the surface, and said pipeline shall be kept fully covered.

(4) Columbia shall at all times keep and maintain said pipeline in proper condition for the purpose of preventing any leakage of gas or other dangerous conditions.

(5) Said pipeline shall be used solely for the transportation of natural gas and its constituents.

(6) Columbia shall have the right during construction to clear the surface of a 70 foot strip and after construction to clear the surface overlying the right-of-way for a width of twenty-five (25) feet on either side of the line hereinbefore described; however, Columbia shall pay for all damage to crops, fences and structures occasioned by the construction, maintenance, operation and/or removal of said pipeline.

(7) Columbia agrees that it will comply with all federal and state laws and regulations promulgated thereunder with respect to the construction and maintenance of said pipeline. Columbia also agrees that it will indemnify and save harmless the party of the first part from any and all damages, costs, expenses, which it may sustain as a result of the construction and maintenance of said pipeline, including any cost or expense which may arise through the enforcement of compliance of any governmental law or regulation because of the proximity of said

pipeline to the mining operations of Coal Companies lawfully mining coal under said lands. Columbia also agrees to indemnify and save harmless the party of the first part, their lessees, grantees, licensees, contractors, agents, and/or employees from any and all claims and rights of action, and all expenses against them by any firm, person and/or corporation on account of the construction, operation, maintenance, and/or removal of said pipeline and/or on account of any laws or with respect to the same, but nothing shall be interpreted as an assumption by Columbia of any greater duty or responsibility to persons, firms or corporations, not parties hereto, than imposed by law, and in event of assertion of such claims or rights of action, the party of the first part, their lessees, grantees, licensees, agents, and/or employees shall timely afford to Columbia full opportunity to defend the same, but at the expense of Columbia.

(8) The party of the first part reserves the right to itself, its lessees, sublessees or assigns, to use the surface, the space over the surface, and the subsurface of the land occupied by said right-of-way for any and all purposes whatsoever, but such reserved right shall not be exercised in such manner as to unreasonably interfere with or endanger the operation by Columbia of the gas pipeline occupying said right-of-way; provided, nevertheless, that the party of the first part does not assume hereby any duty to provide any subsurface or lateral support of the right-of-way and Columbia expressly assumes all risks of injury or damage to said pipeline or to any person or property, which may be caused in whole or in part by a subsidence or cracking of the surface of the right-of-way occupied by said pipeline incident to the lawful mining of the coal underlying said right-of-way, and agrees to indemnify the party of the first part, against, and hold it safe and harmless from, any and all liability for any such injury or damage.

(9)(a) It is distinctly understood and agreed by and between the parties hereto, anything herein elsewhere contained to the contrary notwithstanding, that the party of the first part makes no claim to the coal or other minerals underlying said right-of-way.

(b) If any portion of said pipeline shall interfere with the lawful rights of the coal owner, its lessees or assigns, to mine said coal, as such rights exist on the date of this agreement, then Columbia, upon written notice of such interference from said coal owner, its lessees or assigns, shall, within a reasonable time from the date of such notice, relocate such portion or portions of said pipeline to a new right-of-way site or sites (hereinafter simply "site") on the lands of the party of the first part. Such new site shall be selected by Columbia in such manner as is calculated to eliminate interference with the present mining of the coal and after taking into consideration the present use of the property by the party of the first part. Any such new site shall constitute a right-of-way in lieu of and in substitution for the right-of-way or portion thereof herein described, and shall be of the same width and subject to the same restrictions, limitations, undertakings, conditions and agreements as are contained in this agreement with respect to the original pipeline.

(c) Columbia shall pay to the party of the first part such amount as may be necessary to compensate it for the property taken for the new right-of-way site, such amount of compensation to be negotiated between the parties hereto within 180 days after the date on which gas begins to flow through the relocated pipeline. If the amount of compensation as aforesaid cannot be negotiated, then Columbia agrees to institute condemnation proceedings within 30 days after expiration of the 180 day period in order to ascertain the amount of compensation to be paid for the new right-of-way site.

(d) After the amount of compensation for the new right-of-way site has been paid by Columbia (whether decided by negotiation or in condemnation proceedings), then that portion of the original right-of-way from which the pipeline has been relocated, and that portion only, shall revert absolutely to the party of the first part or its assigns, to the same extent and as fully as upon the happening of an event of termination.

(e) Nothing contained herein shall be construed as a limitation on the right of Columbia to immediately relocate the said pipeline on the lands of the party of the first part in the event of interference with coal mining operations, including failure to negotiate and/or pay the aforesaid amount of compensation by the date of first entry on such new right-of-way site.

(f) This agreement shall continue in full force and effect as to those portions of the pipeline or rights-of-way unaffected by a partial relocation.

(10) The party of the first part makes no warranty of title and/or of quiet possession and/or otherwise, and these presents are subject to all limitations, restrictions and reservations contained in deeds or other muniments of title under which the party of the first part holds title to said right-of-way. This Agreement is also made subject to the outstanding rights of others in and to all public highways, electric transmission and telephone line rights-of-way in existence, railroad rights-of-way, and all easements and rights now held by others under the party of the first part.

(11) These presents shall inure to the benefit of, and shall in all respects bind the heirs and successors, lessees and assignees of, the respective parties hereto.

B. C. & L. BOOK 061 PAGE 647

(12) Under the penalties of fine and imprisonment as provided by law, the grantors do hereby declare that the total consideration for the property transferred by this document is ($75,942.00), and therefore, said property is subject to state excise tax.

IN WITNESS WHEREOF, all of the parties hereto have executed this agreement, in duplicate, in the manner provided by law, as of the day and year first above written.

STATE & COUNTY $4.65 513093 | STATE & COUNTY $6.95 367702 | STATE & COUNTY $4.95 367701

GEORGIA PACIFIC CORPORATION

SENIOR VICE PRESIDENT

ATTEST:

ASSISTANT SECRETARY

APPROVED 4-22-90 BEH

ATTORNEY

COLUMBIA GAS TRANSMISSION CORPORATION

D. C. Hubbard, Vice President

ATTEST:

STATE & COUNTY $9.15 120332 | STATE & COUNTY $9.05 085358 | STATE & COUNTY $4.03 085357

This instrument prepared by:
B. E. Melton
P. O. Box 1273
Charleston, WV 25325

B. C. & L. BOOK 061 PAGE 648

STATE OF [illegible]

COUNTY OF [illegible], to-wit:

I, [illegible], a Notary Public of said County, do certify that [illegible], who signed the writing hereto annexed bearing date the 14th day of April, 1980, for GEORGIA PACIFIC CORPORATION, has this day in my said county, before me, acknowledged the said writing to be the act and deed of said corporation.

Given under my hand this 14th day of April, 1980.
My commission expires March 16, 1981.

[signature]
Notary Public

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

I, VICKI L. WATTERS, a Notary Public of said County, do certify that D. C. Hubbard, Vice President, who signed the writing hereto annexed bearing date the 16TH day of APRIL, 1980, for COLUMBIA GAS TRANSMISSION CORPORATION, has this day in my said county, before me, acknowledged the said writing to be the act and deed of said corporation.

Given under my hand this 29TH day of APRIL, 1980.
My commission expires SEPTEMBER 6, 1989.

Vicki L. Watters
Notary Public

B. C. & L. BOOK 081 PAGE 649



B. C. & L. BOOK 061 PAGE 650

UNITED STATES
DEPARTMENT OF THE INTERIOR
GEOLOGICAL SURVEY



STATE OF WEST VIRGINIA
REPRESENTED BY THE
STATE OF WEST VIRGINIA GEOLOGICAL SURVEY
AND OTHER STATE AGENCIES




WEST VIRGINIA
7.5 MINUTE SERIES (TOPOGRAPHIC)
NE/4 MATEWAN 15' QUADRANGLE
82°00'
37°45'
Superior Bottom
Barnabus
Branch
Oldhouse
Creek
CHESAPEAKE
AND
OHIO
Island
Creek
Stirrat Sch
Farley Cem
Cow Creek Ch
Gas Well
Branch
Stirrat
Water Tank
Compressor Sta
D C R E E K
ESTATE
Sang
Air Shaft
Mine
Creek
Mine Dump
Spring Branch
Littles
Air Shaft
Gas Wells
Fork
PIPELINE
Gas Wells
Right
Fork
PACIFIC
COAL CO. (MINERAL)
CREEK
270 000 FEET
42'30"
SARAH ANN 1.1 MI.
CHAUNCEY 1.5 MI.
MONAVILLE 6 MI.



LINE
LOGAN CO
MINGO CO
UNITED STATES STEEL CORP.
PROPERTY
Grant Br
Highway
Gas Well
Compressor Sta
BM 1239
Pie
Ferrell Cem
Pigeon
Cem
BM 1418
Browning Cem
Creek
Thacker Fork
Branch
Kennedy Cem
CORP.
STATION LOT
SHEET 1 OF 3
C-430-B
EXHIBIT A
HAMPDEN (VIA U.S. 52) 3.8 MI.
WELCH (VIA U.S. 52) 43 MI.
40'
37°37'30"
82°00'
ROAD CLASSIFICATION
Heavy-duty
Light-duty
Medium-duty
Unimproved dirt
U.S. Route
W. VA.
QUADRANGLE LOCATION
BARNABUS, W. VA.
NE/4 MATEWAN 15' QUADRANGLE
N3737.5—W8200/7.5
1963
PHOTOREVISED 1978
AMS 4559 II NE—SERIES V854




Mapped, edited, and published by the Geological Survey

Control by USGS and USC&GS

Topography by photogrammetric methods from aerial photographs taken 1959. Field checked 1963

Polyconic projection. 1927 North American datum
10,000-foot grid based on West Virginia coordinate system, south zone
1000-meter Universal Transverse Mercator grid ticks, zone 17, shown in blue

Revisions shown in purple compiled from aerial photographs taken 1976. This information not field checked




UTM GRID AND 1976 MAGNETIC NORTH DECLINATION AT CENTER OF SHEET


PROPOSED 16" GAS PIPE LINE
Branch
Gas Well
PIPELINE
Laurel
Little
Meador
Br
Rover
Branch
Muncy
Little
PROPERTY
PIPELINE
Hatfield Cem
Air Shaft
Varney Cem
Musick Cem
Creek
Musick
Mine
Sub Sta
Mine
Longtail
Lick
Slick
MAGNOLIA
Roadside Park
Muncy Valley Ch
Cem
Gas Well
Compressor
Big
Branch
COLUMBIA GAS TRANSMISSION CORP.
MAP SHOWING
PROPOSED 16" GAS PIPE LINE
AND
PROPOSED REGULATOR & MEASURING STATION LOT
ON LANDS OF
GEORGIA PACIFIC
ISLAND CREEK DIST. LOGAN CO., W.VA.
HARDEE DIST. MINGO CO., W.VA.
SCALE - 1" = 2000' MARCH 1, 1979
REVISED - APRIL 5, 1979
2'30"
SCALE 1:24 000
1 MILE
1 KILOMETER
CONTOUR INTERVAL 40 FEET
THIS MAP COMPLIES WITH NATIONAL MAP ACCURACY STANDARDS
FOR SALE BY U. S. GEOLOGICAL SURVEY, RESTON, VIRGINIA 22092
A FOLDER DESCRIBING TOPOGRAPHIC MAPS AND SYMBOLS IS AVAILABLE ON REQUEST

STATE OF WEST VIRGINIA
REPRESENTED BY THE
STATE OF WEST VIRGINIA GEOLOGICAL SURVEY
AND OTHER STATE AGENCIES



HOLDEN QUADRANGLE
WEST VIRGINIA
7.5 MINUTE SERIES (TOPOGRAPHIC)
SE/4 HOLDEN 15' QUADRANGLE






Mapped, edited, and published by the Geological Survey

Control by USGS and USC&GS

Topography by photogrammetric methods from aerial photographs taken 1957–58. Field checked 1963

Polyconic projection. 1927 North American datum
10,000-foot grid based on West Virginia coordinate system, south zone
1000 meter Universal Transverse Mercator grid ticks, zone 17, shown in blue

Revisions shown in purple compiled from aerial photographs taken 1976. This information not field checked

UTM GRID AND 1976 MAGNETIC NORTH DECLINATION AT CENTER OF SHEET


PIPE LINE SURVEY
CHESAPEAKE
Trace
Camp
Br.
Water Tank
CHESAPEAKE
Upper Whitman
Whitman
Creek
Substation
Branch
Polecroad
ESTATE
COLUMBIA GAS TRANSMISSION CORP.
MAP SHOWING
PROPOSED 16" GAS PIPE LINE
AND
PROPOSED REGULATOR & MEASURING STATION
ON LANDS OF
GEORGIA PACIFIC
ISLAND CREEK DIST.
HARDEE DIST.
SCALE-1"=2000'
LOGAN CO., W.VA.
MINGO CO., W.VA.
MARCH 1, 1979
REVISED APRIL 5, 1979
Right
(BARNABUS)
SCALE 1:24 000
1 MILE
7000 FEET
1 KILOMETER
CONTOUR INTERVAL 40 FEET
NATIONAL GEODETIC VERTICAL DATUM OF 1929
THIS MAP COMPLIES WITH NATIONAL MAP ACCURACY STANDARDS
FOR SALE BY U.S. GEOLOGICAL SURVEY, RESTON, VIRGINIA 22092




EXHIBIT A

ROAD CLASSIFICATION

| | |
|---|---|
| Heavy-duty | Light-duty |
| Medium-duty | Unimproved dirt |
| U.S. Route | State Route |



QUADRANGLE LOCATION

HOLDEN, W. VA.

SE/4 HOLDEN 15' QUADRANGLE

N3745—W8200/7.5

1963

PHOTOREVISED 1978

UNITED STATES
DEPARTMENT OF THE INTERIOR
GEOLOGICAL SURVEY



STATE OF WEST VIRGINIA
REPRESENTED BY THE
STATE OF WEST VIRGINIA GEOLOGICAL SURVEY
AND OTHER STATE AGENCIES



WEST VIRGINIA
7.5 MINUTE SERIES (TOPOGRAPHIC)
NE/4 HOLDEN 15' QUADRANGLE






Mapped, edited, and published by the Geological Survey

Control by USGS and USC&GS

Topography by photogrammetric methods from aerial photographs taken 1958. Field checked 1963

Polyconic projection. 192 ' · orth American datum
10,000-foot grid based on 'Aest 'Virginia coordinate system, south zone
1000-meter Universal Transverse Mercator grid ticks, zone 17, shown in blue

Revisions shown in purple comp·:cd :rom aerial photographs taken 1976. This information no; field checked




UTM GRID AND 1976 MAGNETIC NORTH DECLINATION AT CENTER OF SHEET




THIS MAP COMPLIES WITH NATIONAL MAP ACCURACY STANDARDS
FOR SALE BY U. S. GEOLOGICAL SURVEY, RESTON, VIRGINIA 22092
A FOLDER DESCRIBING TOPOGRAPHIC MAPS AND SYMBOLS IS AVAILABLE ON REQUEST

KELLE
808 KA
CHAR


'ANSMISSION CORP.
SHOWING
" GAS PIPE LINE
AND
R & MEASURING STATION LOT
LANDS OF
GIA PACIFIC
ST. LOGAN CO., W. VA.
MINGO CO., W. VA.
MARCH 1, 1979
REVISED APRIL 5, 1979
SHEET 3 OF 3
C-430-B
CHIEF LOGAN
STATE RECREATION AREA
Rocky
Right
Fork
Creek
Gas Well
PIPELINE
BOUNDARY
ISLAND CREEK
37°52'30"
82°00'
ROAD CLASSIFICATION
Medium-duty
Light-duty
Unimproved dirt
State Route
QUADRANGLE LOCATION
CHAPMANVILLE, W. VA.
NE/4 HOLDEN 15' QUADRANGLE
N3752.5—W8200/7.5
1963
PHOTOREVISED 1976
AMS 4559 I NE—SERIES V854
KELLER'S PHOTOPRINT SERVICE
808 KANAWHA BLVD. E. BOX 269

EXHIBIT A


Gas Well
Little
1800
2000
1600
Compre
Muncy Valley
Ch
Cem
Gas
52
119
BM
1172
Roadside Park
1200
1400
Gas Well
Big
2045
1600
2200
1800
Gas Well
2000
Fork
Gas Well
2370
2052



GEORGIA PACIFIC
Gas Well
Little Muncy
1800
2000
1600
Compre
1239
Muncy Valley Ch
Gas W
Cem
52
119
BM 1172
1191
1200
Roadside Park
Gas Well
Big
Muncy
2045
1600
2200
1800
Gas Well
Fork
Gas Well
2370
2052


PROPOSED GAS PIPELINE
PROPOSED COMPRESSOR STATION SITE
Gas Well
Highway
PROPOSED ROUTE FOR 20" GAS PIPE LINE
Pie
Ferrell Cem
Pigeon
Cem
2294
BM 1418
1332
1274
Gas Well
Browning Cem
2254
Creek
Thacker
Fork
Branch
2045
Kennedy Cem


1600
1200
1800
2278
1400
Cem
1800
1600
Gas Well
1200
1600
1600
Strip Mine
1200
1600
Gas Well
1800
2000
1800
1600
1600
1600
Gas Well
1800
1800




COLUMBIA GAS TRANSMISSION CORP.
MAP SHOWING
PROPOSED GAS PIPE LINE
AND
PROPOSED COMPRESSOR STATION SITE
ON LANDS OF
UNITED STATES STEEL CORPORATION
MAGNOLIA DIST. MINGO CO. W.VA.
SCALE- 1"=1000' 1-16-79

3724
OFFICE OF THE CLERK OF THE COUNTY COURT 5/29/80
MINGO COUNTY WEST VIRGINIA
9:37 Am
THE FOREGOING WRITING TOGETHER WITH THE CERTIFICATE
OF ACK[redacted]GEMENT THEREOF, THERETO A[redacted], WAS THIS DAY
ADMITTED TO RECORD IN SAID OFFICE

C-430
[redacted]


1333
1400
2000
1600
Fork
1600
2216
1600
1.600
1600
2000
1600
Foundation
1400
2017
1400
1600
1200
Fork
1800
1200
1810
1800
1400
1200
1400
Cem
Gas Well
1730

B. C. & L. BOOK 061 PAGE 652




~NOTE~
IRON PINS ARE SET ON ALL CORNERS.

3385

OFFICE OF THE CLERK OF THE COUNTY COURT 5/29/80
MINGO COUNTY WEST VIRGINIA 9:36 Am
THE FOREGOING WRITING TOGETHER WITH THE CERTIFICATE OF ACKNOWLEDGEMENT THEREOF, THERETO ANNEXED, WAS THIS DAY ADMITTED TO RECORD IN SAID OFFICE
RECORDING FEE 23.75 CLERK [signature]

COLUMBIA GAS TRANSMISSION CORPORATION
1700 MacCorkle Ave. S. E.
Post Office Box 1273, Charleston, W. Va. 25325

| | |
|---|---|
| DEPARTMENT: CIVIL ENGINEERING | DIVISION: HUNTINGTON |
| PROJECT: LINE [illegible] | TAX DISTRICT (S): ISLAND CREEK |
| NECESSITY: MEASURING & REGULATION FOR LOGAN | COUNTY (IES): LOGAN |
| DATE: 3-1-79 · ENGINEER: D.C. KIRTS · FIELD BOOK: [illegible] · PAGE: [illegible] | STATE (S): W. VA. |
| DRAWN BY: D.C.K. · TRACED BY: · CHECKED BY: · REVISIONS: | SHEET NO. 1 OF 1 |
| INV. MAP NO. | |
| WORK ORDER (S): 185-2600- [illegible] | DWG.: [illegible]-3845 |

EXHIBIT B

# EXHIBIT B

**charris@charrislaw.com**

| | |
|---|---|
| **From:** | charris@charrislaw.com |
| **Sent:** | Tuesday, April 22, 2025 5:03 PM |
| **To:** | 'Casto, Matthew S.' |
| **Cc:** | 'Markins, Kristi' |
| **Subject:** | RE: S&S/Columbia |

Good Afternoon Matt,

Thanks for your email and, as we discussed, we disagree on the interpretation of the 1980 ROW Agreement and the rights Columbia has to use, and restrict my client's use, of her own property. To be clear, it is my client's position that neither she, nor her agents, servants, or employees, have done anything to "endanger the operation of the pipeline" and the failure of the pipeline resulting in the explosion on March 2, 2025, was the fault of Columbia or its agents, contractors, suppliers, or employees. Any further restriction on the use of her property, other than what is required under the 1980 Agreement, will be considered a taking of her property rights and compensation for the additional taking, in addition to the damages suffered by my client as the result of the explosion, will be sought.

My client will permit, and encourages, Columbia to install asphalt crossings at the 4 intersections of her private roadways and the pipeline ROW, however, the jersey barrier proposal discussed would unduly and severely further restrict my client's use her property and would also involve significant maintenance to keep the areas around the barriers mowed and trimmed. Using chemicals to control the vegetation would not be an option as my client's cattle are frequently in that area.

For now, S&S Recycling is operating on the office building side of the ROW to afford Columbia an opportunity to secure the crossings as discussed. We do not intend to permanently operate out of this cramped and inconvenient area, and do plan to return to the other side of the ROW to resume recycling operations from there in the near future if Columbia does not take steps to secure the crossings in the coming days.

The forced closing of her business for several days and the current restricted operations area have caused my client's business to suffer tremendously to the point that she is having to seek a loan from her bank to continue operating. She is currently alternating opening/closing days and is having difficulty covering her expenses which have continued to accrue despite her inability to operate her business.

*Chris*

Christian R. Harris
Attorney at Law
Post Office Box 257
128 East Second Avenue
Williamson, West Virginia 25661

Office (304) 235-2131
Cell (606) 369-6365
Fax (304) 235-2132
**Email:** charris@charrislaw.com

# EXHIBIT C



Private Road #1
Private Road #2
Private Road #4
Private Road #3