# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

COLUMBIA GAS TRANSMISSION, LLC,

          Plaintiff,

v.                                CIVIL ACTION NO. 2:25-cv-00289

S & S RECYCLING, INC., and
ZELORA SIMPKINS,

          Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Plaintiff's *Verified Complaint* (Document 1), the *Plaintiff's Motion for Preliminary Injunction* (Document 5), the *Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction* (Document 6), and the Defendants' *Joint Response to Plaintiff's Motion for Preliminary Injunction* (Document 13), as well as all exhibits. On May 21, 2025, the Court held a hearing on the motion for a preliminary injunction to receive evidence, including witness testimony. For the reasons stated herein, the Court finds that the motion for a preliminary injunction should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Columbia Gas Transmission, LLC ("Columbia"), transports and stores natural gas in interstate commerce. Columbia is the successor in title to an easement between Georgia-Pacific Corporation and Columbia Gas Transmission Corporation dated April 16, 1980 (the "Agreement"). The Agreement allows Columbia to construct and maintain a pipeline for

natural gas transportation. The right-of-way extends twenty-five feet on either side of the surface above the pipeline.

The Defendants are Zelora Simpkins and S&S Recycling, Inc. Ms. Simpkins owns real property in Logan County, West Virginia, that is subject to the Agreement. She is also the President of S&S Recycling, which has operated a metal recycling business on the property since 2007. Ms. Simpkins also uses the property as a cattle farm. Before 2007, surface mining was conducted on the property.

Columbia operates a 16-inch high pressure natural gas pipeline, designated as line SM-116, on part of Ms. Simpkins' property pursuant to the Agreement. The pipeline was constructed in 1989. It has an external fusion bond epoxy coating, and an impressed cathodic protection system that was implemented within one year of its initial installation. The pipeline is buried more than five feet below the surface and underlies multiple private roadways used by the Defendants. (Pl.'s Ex. 18-11.)

On March 2, 2025, a section of the pipeline on Ms. Simpkins' property ruptured. (Pl.'s Ex. 18-10, -15.) The rupture blasted the fill surrounding the pipeline skyward and released natural gas. (Def.'s Ex. 19-5.) There were no injuries. After the rupture, Columbia repaired the pipeline and sent it to DNV USA Inc., for metallurgical analysis. The testing indicated that the rupture occurred due to topside third-party mechanical damage. (Pl.'s Ex. 18-14 at 3.)

The pipeline is regulated by the Pipeline and Hazardous Materials Safety Administration (PHMSA). Columbia is subject to various regulations promulgated by PHMSA, and is required by PHMSA to implement safety policies that protect those in contact with the pipeline and the integrity of the pipeline. Since the rupture, Columbia placed jersey barriers around the pipeline

and established crossing locations on the Defendants' private roadways. Columbia states these safety measures are necessary to comply with PHMSA's regulatory mandates.

On May 1, 2025, Columbia filed a complaint against the Defendants seeking declaratory judgment, injunctive relief, and compensation for the Defendants' alleged negligence, and on May 6, 2025, filed its motion for preliminary injunction. It is Columbia's position that the pipeline rupture was caused by the Defendants' use of heavy machinery, placement of scrap metal, and excavation conducted on the surface of the pipeline. Columbia seeks to prevent the Defendants from crossing the pipeline outside approved locations, excavating within the pipeline right-of-way, interfering with the installation of safety devices around the pipeline, and placing any materials over the pipeline.

During the preliminary injunction hearing, the Plaintiff presented three witnesses. The Court first heard testimony from Floyd Osborne, who works as a land representative for TC Energy, dba Columbia. He is responsible for supporting operations and meeting with landowners to secure easements. He is familiar with the property at issue and the Agreement. Mr. Osborne was not present when the pipeline ruptured but was able to view the rupture the morning after it occurred. He and other individuals secured the site and removed the pipeline for repair and testing. He testified that Ms. Simpkins agreed, at his request, not to post anything about the rupture on social media.

Next, the Plaintiff presented Scott Currier, the Director of Integrity for TC Energy. Mr. Currier was familiar with the pipeline and testified that Columbia has conducted monthly aerial observations of it since 2007. He stated that Columbia has policies in effect to comply with PHMSA regulations and these policies are made available to landowners through annual mailers. The mailers provide guidance for crossing pipelines with heavy equipment, excavating near

pipelines, and other construction activities. (Pl.'s Ex. 18-5.) Following the rupture, Columbia provided PHMSA with a letter of commitments to restore the pipeline's integrity and restart operations. (Pl.'s Ex. 18-6.) To mitigate further risk, Mr. Currier testified that Columbia installed jersey barriers as an engineering control, which he says is necessary when there has been third-party damage. He stated that administrative controls (*See* Pl.'s Ex. 18-12) would not be feasible because they may not be followed. He testified Columbia is particularly concerned with the Defendants' placement of scrap metal over the pipeline (Pl.'s Ex. 18-2, -3, -4), which blocks access to the pipeline in case of an emergency and limits the effectiveness of aerial patrols. When Mr. Currier visited the property after the rupture, he saw divots and craters near the right-of-way, which he testified must have come from material being set down and picked up.

Then the Court heard the testimony of John Beavers, who holds a Ph.D. in metallurgical engineering, is employed by DNV USA as its Corporate Vice President, and has over forty years of metallurgical engineering experience. He performed testing on the ruptured portion of the pipeline and prepared a report outlining the testing results. (Pl.'s Ex. 18-14.) Dr. Beavers determined that the long scrapes and gouges on the exterior of the pipeline were caused by topside third-party mechanical damage.[1] He stated there is no doubt that external mechanical damage caused the pipeline's failure. Dr. Beavers further testified that the mechanical damage likely occurred within the last five years.

The Defendant, Ms. Simpkins, was the last witness to testify. She stated that S&S Recycling uses excavators in its business, but never to dig. The excavators are used to load and unload trucks, pick up scrap metal bits with a magnet attachment, shear metal into pieces, and

---

[1] Originally, the report did not specify that the topside damage was caused by a third party. The report was changed at Columbia's request and based on Columbia's statement that it did not conduct excavation or digging near the pipeline.

scoop metal into a bucket with a thumb attachment. Aside from digging footers near the surface of a barn on her property, which is not within the pipeline right-of-way, she is unaware of any digging on the property. Her office overlooks the rupture site, and she has never seen any digging near the line. She testified that she last had employees working near the pipeline rupture a month prior to the rupture to pick up metal screens used in coal mining, but again, stated there was no digging involved in the employees' work. She had no concerns about the weight of her own equipment because a strip mine previously operated on the property, and that equipment was much heavier than hers. Ms. Simpkins has encouraged Columbia to case the pipeline or asphalt the roads' crossing locations to mitigate the risk of another rupture. She also suggested methods to more effectively mark the location of the pipeline. However, she objects to the placement of the jersey barriers because it is difficult to move a tractor around the barriers, which would interfere with both the cow farm and recycling operations on the property.

## APPLICABLE LAW

Rule 65(b)(1) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be issued without notice

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). A preliminary injunction may be issued "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The Defendants have appeared and responded in this matter.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs must satisfy all four requirements. *JAK Prods., Inc. v. Bayer*, 616 F. App'x 94, 95 (4th Cir. 2015) (unpublished, per curiam opinion); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *cert. granted, judgment vacated,* 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), and *adhered to in part sub nom. The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010). Thus, injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (internal punctuation and citations omitted).

## DISCUSSION

Columbia asks the Court to enter a preliminary injunction to maintain safety and prevent irreparable harm.  In support of its motion, Columbia contends that it is likely to succeed on the merits because the agreement expressly supports the use of the property to maintain the pipeline, federal law has preempted the field of interstate natural gas transmission and mandates the safety devices it seeks to implement, and protections will mitigate safety hazards to the public.  Columbia further argues that it will suffer irreparable harm because its money damages will be incalculable and inadequate if another rupture of the natural gas line occurs, the Defendants may not be able to compensate Columbia, it will be denied the benefit of its property rights, it is incapable of complying with federal law due to the Defendants' refusal to implement safety measures, and it will suffer a loss of customer goodwill and reputation if gas transmission is interrupted.  Columbia states that a balance of the equities is in its favor and granting relief is in the public interest because the safety measures it seeks to implement are minimally intrusive, mitigate risk, and allow the responsible development of natural gas resources.

In response, the Defendants argue that Columbia has not demonstrated a likelihood of success because it has no legal entitlement to make physical alterations without Ms. Simpkins' consent or an otherwise valid agreement. The Defendants emphasize that they retain surface rights pursuant to the easement, and the Plaintiff's proposal would interfere with their use of the surface of the property. Thus, the Defendants state that Columbia must follow the statutory condemnation process and compensate Ms. Simpkins if they restrict her surface access. They contend that there is no irreparable harm to justify injunctive relief because speculative harms are compensable with money damages, Columbia delayed in seeking an injunction, and Columbia's safety concerns are hollow. Finally, the Defendants argue that the public has a strong interest in the protection of private property rights, that granting this injunction would create a dangerous precedent for landowners subject to oil rights-of-way, alternative safety measures are readily available, and there is not a clear public safety concern that would be advanced.

An initial bar to relief arises from Columbia's failure to demonstrate that the Defendants' conduct irreparably harmed Columbia. "While irreparable harm is only one of the four factors courts must consider in determining whether to grant injunctions, the Supreme Court has made clear that, regardless of the other factors, '[t]he equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury.'" *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386 (4th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). To establish an irreparable harm, the moving party must clearly show that the harm it will suffer is "neither remote nor speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (citations omitted). Additionally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable*

*Operating Co.,* 22 F.3d 546, 551 (4th Cir. 1994).

Columbia contends that another pipeline rupture will cause incalculable damage that cannot be adequately compensated with money damages.  However, Columbia fails to clearly show that the Defendants' conduct did cause the rupture or will cause a future rupture.  It did not produce evidence that the Defendants have engaged in excavation anywhere on the property, including above the pipeline, or that they plan to do so in the future.  Ms. Simpkins testified that neither her cattle farm nor recycling business engage in excavation.  Merely showing that *something* scraped and gouged the exterior of the pipeline *sometime* within the past five years is not enough to show an actual or imminent harm.

Columbia's argument on the Defendants' ability to compensate it similarly does not establish irreparable harm.  The Fourth Circuit has explained that "extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction," such as where "damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected."  *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).  Although Columbia asserts that the Defendants "may" be financially incapable of compensating it, simply speculating about the Defendants' financial resources is not sufficient to make a clear showing of irreparable harm, particularly in the case of a "rarely invocable" extraordinary circumstance.  (Document 5 at 5); *Henderson v. Bluefield Hosp. Co., LLC*, 208 F. Supp. 3d 763, 772 (S.D.W. Va. 2016) (Faber, J.), *aff'd sub nom. Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432 (4th Cir. 2018).

Moreover, Columbia has not demonstrated that it has been or will be denied access to its real property interests because of the Defendants.  Aside from the disruption to the pipeline's operation in March, Columbia has been able to operate and maintain its pipeline pursuant to the

Agreement. As discussed previously, Columbia has failed to establish a connection between the Defendants' conduct and the previous rupture or a future rupture. There is no evidence that its use of the right-of-way will be disrupted and lead to irreparable harm.

While Columbia claims it cannot comply with federal laws relating to the safe operation of natural gas transmission unless the jersey barriers are in place, it again fails to establish a connection between the Defendants' conduct and its ability to follow federal law. Columbia has not had any difficulty following federal law since its installation of the pipeline in 1989 or after the Defendants began the recycling business on the property in 2007. It admits that placing jersey barriers is not the only way Columbia can comply with federal law. It can engage in other safety measures, such as asphalting the crossing locations and/or casing the pipeline. Ms. Simpkins testified she encourages these safety measures. Columbia can also implement administrative controls. (*See* Pl.'s Ex. 18-12 at 4-5). While Columbia concluded it could not use administrative controls because such controls require third-party cooperation, there has been no showing that the Defendants have been uncooperative. Therefore, Columbia has not shown it cannot follow federal law without the jersey barriers, or that it will suffer irreparable harm without the jersey barriers.

Further, there is not sufficient evidence in the record to demonstrate that the Defendants' conduct damaged Columbia's goodwill or reputation among its customers. Columbia has not offered any evidence that customer goodwill was damaged because of the rupture. In fact, Columbia took steps to ensure that its reputation was not damaged by asking Ms. Simpkins to refrain from posting about the rupture on social media, to which she agreed. If anything, the Defendants' conduct helped preserve Columbia's reputation among its customers by keeping the rupture away from social media.

Thus, the Court finds Columbia has not established a likelihood of irreparable harm in the absence of preliminary relief. The inquiry ends here. *Real Truth*, 575 F.3d at 346 ("All four elements must be established by a 'clear showing' before the injunction will issue."); *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) ("[A] district court is entitled to deny preliminary injunctive relief on the failure of any single *Winter* factor, without fully evaluating the remaining factors.").

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiff's Motion for Preliminary Injunction* (Document 5) be **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: May 30, 2025

*[Signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA