# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# (Charleston Division)

**COLUMBIA GAS TRANSMISSION, LLC,**

    **Plaintiff,**

v.

                              **CIVIL ACTION NO. 2:25-cv-289**
                              **JUDGE IRENE C. BERGER**

**S&S RECYCLING, INC., and**
**ZELORA SIMPKINS,**

    **Defendants.**

## AMENDED COMPLAINT

Plaintiff, Columbia Gas Transmission, LLC ("Columbia"), files this Amended Complaint for Injunctive Relief, Declaratory Judgment, Negligence and Damages against Defendants S & S Recycling, Inc. ("S&S") and Zelora Simpkins, and hereby states as follows:

## PARTIES AND JURISDICTION

1.    Columbia is a Delaware limited liability company with its principal place of business in Houston, Texas.

2.    Upon information and belief, S&S is a corporation organized under the laws of the State of West Virginia, with its principal place of business in West Virginia.

3.    Upon information and belief, Defendant Zelora Simpkins is a citizen and resident of the State of West Virginia.

4.    This Court has federal question jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because Columbia's claims arise under the laws of the United States and present a question under federal law.

{B3888945.2}                              1

5. Venue is proper in the Southern District of West Virginia, Charleston Division, pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to Columbia's claims occurred in this district.

## FACTUAL BACKGROUND

6. Columbia is a company organized for the purpose of, among other things, transporting and storing natural gas in interstate commerce as defined in 49 C.F.R. §192.3.

7. Columbia is party to a certain easement agreement dated April 16, 1980, of record in Logan County, West Virginia Book 61, Page 629 (the "ROW Agreement"), a copy of which is attached **Exhibit A**.

8. Pursuant to the express terms of the ROW Agreement, Columbia has the right, among other things, to construct and maintain a pipeline for the transportation of natural gas and its constituents. In addition, the ROW Agreement provides that Columbia shall, at all times, keep and maintain the pipeline in proper condition for the purpose of preventing any leakage of gas or other dangerous conditions. The ROW Agreement further grants Columbia the right to clear the surface overlying the pipeline for a width of twenty-five feet on either side of the pipeline.

9. The ROW Agreement permits the use of the surface and subsurface by the grantor but such right shall not be exercised in such a manner as to unreasonably interfere with or endanger the operation by Columbia of the gas pipeline occupying the right of way.

10. As a result of its rights under the ROW, Columbia constructed and now owns and operates a 16" high pressure natural gas interstate pipeline designated as line SM-116 (the "Pipeline"). The Pipeline is regulated by the Pipeline and Hazardous Materials Safety Administration ("PHMSA").

11.     A portion of the Pipeline is located on real property owned by Defendant Zelora Simpkins located in Island Creek District, Logan County, West Virginia (the "Subject Property"). The Subject Property is subject to the ROW Agreement.

12.     Defendant S&S operates a recycling business on the Subject Property which is subject to the ROW Agreement.  The Pipeline crosses the Subject Property and through the location of the recycling business operated by S&S.

13.     Defendants have exclusive control of the Subject Property with respect to access from third-parties by way of a locked gate and controlled access point.

13.     The Pipeline was first installed in 1989 and was externally coated with a fusion bond epoxy (FBE) coating.  The Pipeline also had an impressed cathodic protection system that was applied within one year of the Pipeline installation.

14.     On or about March 2, 2025, there was a release of natural gas from the Pipeline on the Subject Property.  The rupture of the Pipeline resulted in a failure crater but did not result in ignition, any injuries, or the ejection of the Pipeline from the crater.

15.     Following the rupture of the Pipeline on March 2, 2025, Columbia took measures to repair the Pipeline and bring it back into service.  Such action required the use of temporary workspace from Defendants and payment of monies to Defendants for the use of the temporary workspace.  A copy of the Temporary Workspace Agreement is attached as **Exhibit B**.  Absent the rupture of the Pipeline, the Temporary Workspace Agreement would have been unnecessary along with any payment of monies to the Defendants.

16.     Based on a preliminary investigation and testing, it was determined that the rupture of the Pipeline was the result of topside mechanical damage from outside forces.  Further, there was evidence of external gouging and coating damage to the Pipeline consistent with mechanical

damage on the failure of the pipe joint. There was also evidence of the transfer of metal onto the Pipeline from heavy equipment, such as an excavator or backhoe and that the mechanical damage was a recent occurrence.

17. Upon information and belief, at the time of the Pipeline rupture, Defendant S&S had placed large amounts of metal and other scrap directly over top of the Pipeline. Further, upon information and belief, S&S caused heavy machinery to traverse over the Pipeline and further performed excavation directly over the Pipeline resulting in the rupture on March 2, 2025.

18. As a result of the actions of Defendants in damaging the Pipeline, Columbia was forced to spend monies in excess of $825,000.00 for the repair and return to service of the Pipeline, costs of which are ongoing and continuing in nature.

19. In addition to the monies expended to repair the Pipeline, after the rupture, Columbia sought to implement necessary safety and preventative measures for the Pipeline to ensure that no further ruptures would occur. These measures include designated crossing locations and the installation of jersey barriers around the Pipeline on the Subject Property.

20. By way of background, PHMSA requires Columbia to create safety policies for third parties who may encroach upon its rights of way in order to protect the integrity of the pipelines and to protect the safety of all persons who may come into contact with the pipeline. As part of those directives from PHMSA, Columbia has developed certain standards and policies to achieve these objectives. Further, any work on or near a pipeline right of way requires coordination with Columbia's Engineering Pipeline Integrity Group. That group is tasked with ensuring that any work and encroachment upon Columbia's property and/or facilities be performed in accordance with all applicable laws, rules and regulations to ensure everyone's safety.

21. With respect to the Subject Property, following the rupture of the Pipeline, Defendants have been advised of these guidelines and have refused cooperative efforts to ensure the safety of Columbia's Pipeline and for all persons working near the Pipeline.

22. Columbia has proposed reasonable safety measures to protect the Pipeline in accordance with the ROW Agreement. Despite this, Defendants have stated that the implementation of such measures would result in a coercive taking of their property and have, to date, refused to allow the implementation of these safety measures.

23. Due to Defendants' actions in traveling over the Pipeline, placing scrap metal and other materials directly over the Pipeline, and excavating within the Pipeline right of way, Columbia estimates that it will cost several thousand dollars to ensure that the integrity of the Pipeline remains safe and operational. These measures are necessary, however, to avoid Defendants' operations from endangering the Pipeline which would unreasonably interfere with Columbia's rights.

24. PHMSA, has propounded regulations governing the operation and maintenance of interstate natural gas transmission pipelines. *See,* 49 U.S.C., Transportation, Subtitle VIII. Pipelines, Chapter 601. Safety, §§60101 - 60141; and 49 C.F.R., Subtitle B. Other Regulation Relating to Transportation, Chapter I. Pipeline and Hazardous Materials Safety Administration, Department of Transportation, Subchapter D. Pipeline Safety, Part 192. Transportation of Natural and Other Gas by Pipeline: Minimum Federal Safety Standards §§192.1 - 192.1015.

25. By refusing to allow protection measures around the Pipeline, Defendants are depriving Columbia its legal rights and also creating a safety hazard to the landowners, Columbia and its contractors, employees and affiliates and the public at large.

26. Pursuant to the ROW Agreement and the regulatory authority issued, Columbia has the absolute right to utilize implement these necessary safety measures without interference. Defendant's actions have created a situation where Columbia has no recourse other than to seek injunctive relief to allow the installation of the safety measures, which include the installation of jersey barriers around the Pipeline.

27. The declarations and other relief sought by Columbia in this matter arise directly from Columbia's efforts to comply with PHMSA's important regulatory mandates as well as the issue of whether or not the implementation of the jersey barriers would, as Defendants allege, constitute an impermissible taking under federal law.

## COUNT ONE – DECLARATORY JUDGMENT
## (28 U.S.C. § 2201, et seq.)

28. The allegations of the preceding paragraphs are hereby incorporated and adopted as if fully set forth herein.

29. Columbia's ROW Agreement expressly provides Columbia with the right to lay, maintain and operate the Pipeline on the Subject Property. In addition, the ROW Agreement provides that Columbia shall, at all times, keep and maintain the pipeline in proper condition for the purpose of preventing any leakage of gas or other dangerous conditions. It further permits the use of the surface and subsurface by the grantor but such right shall not be exercised in such manner as to unreasonably interfere with or endanger the operation by Columbia of the gas pipeline occupying the right of way.

30. The Subject Property is subject to the ROW Agreement.

31. Columbia has the right, and is required, to operate and maintain the Pipeline in compliance with federal law and regulations.

32. The ROW Agreement, at a minimum, must be construed to permit Columbia's control over the Pipeline and to ensure that Columbia has the right to take such measures to avoid endangering the Pipeline and the public at large.

33. The operation of a scrap metal recycling facility on the Subject Property, and over the Pipeline, by S&S and on the Subject Property owned by Defendant Zelora Simpkins has created a safety hazard not contemplated by the surface use provisions in the ROW Agreement. Specifically, the operations of a scrap metal facility, as currently configured is unreasonably interfering with the right of way and endangering the operation of the Pipeline.

34. Under the express terms of the ROW Agreement, Columbia has the absolute right to clear the surface overlying the pipeline for a width of twenty-five feet on either side of the pipeline.

35. As a result of S&S' operations on the Subject Property and over the Pipeline, Columbia has identified necessary and required safety measures, including the installation of jersey barriers, to prevent any further damage to the Pipeline.

36. The Pipeline is operated and maintained in reliance upon the ROW Agreement in relation to the Subject Property which is the servient estate and Columbia's interest is the dominant estate.

37. Defendants took their property interests with actual or constructive knowledge that the Subject Property was burdened by the full complement of rights granted to Columbia by the ROW Agreement, including, but not limited to, Columbia's right to keep and maintain the Pipeline in proper condition for the purpose of preventing any leakage of gas or other dangerous conditions.

38. Defendants further took their interest in the Subject Property with an understanding that the Pipeline was being operated by virtue of the continually evolving universe of federal law and regulations relative to the transport of natural gas in interstate commerce.

39. Columbia has a legal obligation to follow federal law and regulations in order to ensure that its operations remain legal and to also protect the safety of the public.

40. The Pipeline Safety Act, 49 U.S.C. § 60128, provides that "no person shall excavate for the purpose of unauthorized disposal within the right-of-way of an interstate gas pipeline facility or interstate hazardous liquid pipeline facility, or any other limited area in the vicinity of any such interstate pipeline facility established by the Secretary of Transportation, and dispose solid waste therein."

41. PHMSA's regulations have defined the term "excavation activities" to mean "excavation, blasting, boring, tunneling, backfilling, the removal of aboveground structures by either explosive or mechanical means, and other earthmoving operations." 49 C.F.R. § 192.614.

42. 49 U.S.C. Sec. 60128 incorporates the Solid Waste Disposal Act's definition of "solid waste" which is "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33, or source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended." 42 U.S.C. § 6903(27).

43. The materials being placed by S&S on the Pipeline constitute solid waste under federal law as the definition is broadly written to include "discarded materials" from "commercial operations" and "community activities" which would include the scrap metal utilized by S&S on the Subject Property.

44. Defendants' refusal to permit Columbia to install and implement necessary safety measures around the Pipeline, including jersey barriers, to prevent and/or mitigate the risk of damage from S&S' operations presents a dangerous situation and hazard to the safety and integrity of the Pipeline and a threat to the health, safety, and welfare of the public, all in violation of federal law and regulations.

45. Defendants have knowingly, intentionally, wrongfully, and negligently obstructed Columbia's rights on the Subject Property and to operate the Pipeline in a lawful and safe manner by rejecting any obligation to permit Columbia to implement the preventative and mitigative measures outlined above.

46. Because Columbia has eminent domain powers under the Natural Gas Act in 28 U.S.C. § 717f(h), it is a quasi-governmental entity. As a result, Columbia has the right to seek a determination and present a "coercive taking" under federal law but seeks a declaration that its actions do not constitute an unconstitutional taking.

47. There exists an actual, present and real justiciable controversy between Columbia and Defendants regarding Columbia's rights under ROW Agreement and federal law and regulations imposed upon Columbia, as well as the limitations of Defendants' use of the Subject Property in a manner that is inconsistent with Columbia's rights on the Subject Property.

48. A declaratory judgment would terminate the uncertainty and controversy giving rise to this lawsuit and will advance the public interest in safe natural gas transmission operations.

49. Columbia is entitled to the following declarations:

a. A declaration that the ROW Agreement is a valid and subsisting encumbrance upon the Subject Property and that Columbia's interests arising from the ROW Agreement are the dominant estates relative to that of Defendants' interests, which are the servient estates

b. A declaration that Columbia has the right to implement necessary safety measures, including the installation of jersey barriers, around the Pipeline in accordance with its rights under the ROW Agreement and federal law and regulations, together with rights of ingress and egress over and through Defendants' lands for access to the Pipeline;

c. A declaration that the implementation of necessary safety measures, including the installation of jersey barriers, around the Pipeline is a reasonable exercise of its contractual rights under the ROW Agreement and is a reasonable approach to satisfy its obligations under PHMSA;

d. A declaration that Defendants' use of the Subject Property may not extend to uses that are inconsistent with the use for which the ROW Agreement was granted and where Columbia's use may be, from time to time, modified by federal law and regulations including, but not limited to excavating within the Pipeline right of way and placing scrap metal and other materials over the Pipeline;

e. A declaration that Columbia, pursuant to the express and implied terms of the ROW Agreement, has not only the right, but the legal obligation, to operate the Pipeline in conformity with federal law and regulations, including but not limited to, those established by PHMSA; and

f. A declaration that its construction and installation of the safety measures, including jersey barriers set forth herein does not present a "coercive taking" under federal law and that Columbia's actions do not constitute an unconstitutional taking.

### COUNT TWO – PRELIMINARY AND PERMANENT INJUNCTION

50. The allegations of the preceding paragraphs are hereby incorporated and adopted as if fully set forth herein.

51. Mandatory injunctive relief is the appropriate remedy to prohibit Defendants from engaging in all activities that jeopardize the integrity and safety of the Pipeline including, but not limited, to crossing the Pipeline in a manner which threatens the integrity of the Pipeline, excavating within the Pipeline right of way, and by placing materials, including scrap metal, over the Pipeline.

52. Columbia lacks a plain, speedy, and adequate remedy at law to prevent Defendants from engaging in activities that jeopardize the integrity and safety of the Pipeline including, but not limited to, interfering with Columbia's rights of ingress and egress over and through the Subject Property in order to access the Pipeline and to implement the safety measures identified herein.

53. A preliminary and permanent injunction is the necessary and appropriate remedy to ensure that Defendants refrain from taking any action that would jeopardize the integrity and safety of the Pipeline.

54. The health, safety and welfare of equipment operators, Columbia personnel, residents, vendors, contractors, and the public at large remain at risk unless this Court grants the injunctive and equitable relief requested herein.

55. Columbia will suffer irreparable harm if injunctive relief is not granted where: 1) Columbia's monetary loss associated with an uncontrolled release of gas would be both

incalculable and where money would be an inadequate remedy; 2) where Defendants' financial means may be incapable of compensating Columbia; 3) where Columbia is rendered incapable of complying with mandatory federal legislative and regulatory obligations relating specifically to the safe operation of natural gas transmission; 4) where Columbia will be deprived of unique real property interests that cannot be compensated with money; and 5) where interruption of natural gas transmission would lead to loss of customer goodwill and reputation.

56. Columbia is likely to succeed on the merits where: 1) the express terms of the ROW Agreement supports the use of the Subject Property for the stated purpose; 2) where federal law and regulations have pre-empted the field of interstate natural gas transmission; and 3) where federal law and regulations mandate the very actions that Columbia seeks to implement.

57. The balance of equities favors Columbia because Defendants will not be harmed by the injunctive relief whereas Columbia will be irreparably harmed if injunctive relief does not issue where: 1) the Subject Property is already burdened by the ROW Agreement; 2) the preventive and mitigative measures that Columbia seeks to implement are minimally intrusive and do not reflect an unreasonable change in the burden on the Subject Property or its use by the Defendants; 3) Defendant's use of their property will not be adversely affected except as to over the Pipeline and 4) Columbia's preventive and mitigative measures are designed to implement federal law and regulations that were enacted to protect life and property, including the life and property of Defendants.

58. Issuance of a preliminary and permanent injunction is in the public interest where: 1) the public interest is advanced by the safe operation of interstate natural gas pipelines; and 2) the public interest is advanced by enforcing and upholding property rights.

59. As a result, Columbia is entitled to the following relief:

    a. A preliminary and permanent injunction against Defendants, their agents, servants, employees, successors and assigns, customers, and any other individual or entity within their control or under their supervision, and all other persons or entities acting in concert with them or on their behalf by contract or otherwise, enjoining them directly or indirectly from interfering with or obstructing the right of Columbia, its successors and assigns, to operate and maintain the Pipeline, including the right to clear any materials overlying the pipeline for a width of twenty-five feet on either side of the pipeline;

    b. A preliminary and permanent injunction against Defendants, their agents, servants, employees, successors and assigns, customers, and any other individual or entity within their control or under their supervision, and all other persons or entities acting in concert with them or on their behalf by contract or otherwise, enjoining them from directly or indirectly interfering with or obstructing the right of Columbia, its successors and assigns, to implement and construct necessary safety measures around the Pipeline, including the implementation of jersey barriers and the clearing of materials over the pipeline; and

    c. A preliminary and permanent injunction against Defendants, their agents, servants, employees, successors and assigns, customers, and any other individual or entity within their control or under their supervision, and all other persons or entities acting in concert with them or on their behalf by contract or otherwise, from crossing the Pipeline except in approved locations, excavating within the Pipeline right of way, or placing or storing any materials, including scrap metal, over the Pipeline.

## COUNT THREE – NEGLIGENCE/RES IPSA LOQUITUR

60. The allegations of the preceding paragraphs are hereby incorporated and adopted as if fully set forth herein.

61. Defendants had exclusive control of the Subject Property and access to the Subject Property was tightly controlled by Defendants..

62. Defendant Zelora Simpkins, as President of S&S, was responsible for the management of all employees and persons on the Subject Property.

63. Columbia performed no excavation on the right of way area or over the Pipeline since its original installation and performed no activities on the right of way area that could have resulted in the rupture.

64. The rupture of the Pipeline would not have occurred had Defendants used due care in their operations.

65. Defendants had a duty to Columbia to not cross the Pipeline, excavate in the Pipeline right of way, or place materials, including scrap metal, over the Pipeline in a manner that would endanger the integrity of the Pipeline.

66. Defendants breached that duty and said breach was the proximate cause of the damage sustained to the Pipeline, including the rupture of the Pipeline and related repair costs and expenses.

67. Said breach by Defendants has caused Columbia to suffer damages to repair the Pipeline, monitor the right of way area and Pipeline and implement necessary safety measures to protect against future damage to the Pipeline.

68. This Court has ancillary jurisdiction to hear any claims for damages to the Pipeline as such claims are substantially related to the declaratory and injunctive relief being sought herein.

### COUNT FOUR – FAILURE TO COMPLY WITH W.VA. CODE §24C-1-5

69. The allegations of the preceding paragraphs are hereby incorporated and adopted as if fully set forth herein.

70. Prior to performing any excavation or work near the right of way or Pipeline, Defendants had a duty to notify Columbia and to notify West Virginia's one-call system established by W.Va. Code 24C-1-1, et seq.

71. Columbia is a party to West Virginia's one-call system and has complied with all provisions of the one-call system.

72. Defendants failed to notify Columbia and West Virginia's one-call system prior to excavating on the Subject Property resulting in the rupture and damage to the Pipeline.

73. Defendants caused damage to Columbia's Pipeline in violation of W.Va. Code 24C-1-5(b).

## COUNT FIVE – EMINENT DOMAIN IN THE ALTERNATIVE

74. The allegations of the preceding paragraphs are hereby incorporated and adopted as if fully set forth herein.

75. Columbia, pursuant to its power of eminent domain as authorized by Section 7h of the Natural Gas Act, 15 U.S.C. § 717f(h) and Federal Rule of Civil Procedure 71.1 is entitled to take certain interests in Defendants' property, as well as to obtain immediate entry and possession of said real property upon the payment of just compensation and damages to Defendants.

76. Since the pipeline is an interstate pipeline, Columbia was required to obtain authority for the Project under its blanket certificate from FERC.

77. While Columbia believes that it has the right to install the necessary safety measures outlined herein under the terms of the ROW Agreement, in the alternative, Columbia has the right to implement these measures by eminent domain.

78. Columbia has attempted to negotiate with Defendants for the installation of the necessary safety measures but, to date, has been unable to obtain Defendants' agreement to do so.

79. Pursuant to the authority granted to it by Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), in the alternative, Columbia now seeks to take by eminent domain the necessary space to install safety measures, including the barriers described herein.

### COUNT SIX – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

80. The allegations of the preceding paragraphs are hereby incorporated and adopted as if fully set forth herein.

81. To establish a claim for tortious interference with business relations, a party must show: (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; causation; and (4) damages. *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F.Supp.2d 873 (S.D. W.Va. 2014).

82. Columbia has a contractual and business expectancy for the transmission of natural gas.

83. Despite knowledge of Columbia's business expectancy, Defendants intentionally, knowingly and improperly interfered with Columbia's ability to operate and maintain the Pipeline, causing damage to its pipeline.

84. As a result of Defendants' actions, Columbia has suffered damages.

### PRAYER FOR RELIEF

WHEREFORE, Columbia respectfully requests the following relief:

A. Judgment against Defendants, and in favor of Columbia and that the Court Order the declaratory and injunctive relief as set forth herein;

B. Judgment against Defendants in an amount that will compensate Columbia for damages incurred by Defendants' conduct in causing a rupture to the Pipeline, including costs for the implementation of necessary safety measures and business interference damages;

   C. In the alternative, Columbia seeks an Order of eminent domain allowing for the installation of necessary safety measures and barriers on the Subject Property;

   D. Pre-judgment and post-judgment interest; and

   E. Such other and further relief as the Court may deem appropriate.

**COLUMBIA DEMANDS A TRIAL BY JURY.**

        Respectfully submitted,

        **COLUMBIA GAS TRANSMISSION, LLC**

        By Counsel,

        */s/ Matthew S. Casto*
        Matthew S. Casto, Esquire (WVSB #8174)
        Ramonda C. Marling, Esquire (WVSB #6927)
        Babst, Calland, Clements & Zomnir, P.C.
        300 Summers Street, Suite 1000
        Charleston WV 25301
        681-205-8888 (telephone)
        681-205-8814 (fax)
        mcasto@babstcalland.com
        rmarling@babstcalland.com